*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WALLACE, Minors.

UNPUBLISHED
October 8, 2019

No. 348351
Wayne Circuit Court
Family Division
LC No. 18-001697-NA

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating her parental rights to her minor children, DW and MW, under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury), MCL 712A.19b(3)(b)(*iii*) (nonparent adult caused physical injury), MCL 712A.19b(3)(g) (failure to provide proper care and custody), MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent), and MCL 712A.19b(3)(k)(*iv*) (parent abused the child, including serious impairment of limb). We affirm.

## I. FACTS

This case arises out of allegations that respondent caused physical injury to her minor child, and failed to protect both minor children from physical injury caused by her partner, Erik McNamee. In September 2018, the children lived with respondent and McNamee. On September 29, 2018, respondent took MW to the hospital because his left arm was swollen. MW, who was then one year old, was transferred to Children's Hospital where it was confirmed that certain of his injuries were not accidental. The pediatrician examining MW later testified that MW's left arm had two fractures, being a fracture at the bottom of the forearm near the wrist, and a fracture at the top of the left arm near the shoulder. The pediatrician testified that the radiology report indicated that the factures were the result of non-accidental trauma, and that the two fractures were at different stages of healing, and thus had not occurred at the same time. The pediatrician also testified that MW had a burn on his back that was not a new burn and was in the process of healing, an abrasion on his right cheek, a bruise to the inside of the mouth, and a hematoma, or large swelling, on his forehead. The pediatrician also testified that MW was very underweight.

-1-

The pediatrician testified that the areas of the injuries, the combination of the injuries, and the failure to timely seek medical care for the injuries suggested that the trauma was not accidental. He testified that respondent had explained that MW's arm fractures were caused when the child fell out of a wagon, but the pediatrician testified that was not the likely cause of the injuries based on the type of injury that occurred. He also testified that respondent told him that she accidentally caused the burn on MW's back by splashing hot water out of the shower, that the abrasion on MW's face was caused when the child climbed on a toy, and that the swelling of MW's forehead was simply because the child had a large forehead.

The investigating Child Protective Services (CPS) worker testified that respondent explained to her that MW's arm fractures occurred when she was at work and the children were in the care of McNamee. When respondent returned home, she noticed the injury and put ice on MW's arm, then bathed MW and put him to bed. The next day when she came home from work, she noticed that MW's arm was still swollen so she took him to the hospital. Respondent explained the abrasion on MW's face as being the result of a fall on a concrete step at their home. She explained that the burn on MW's back was the result of respondent accidentally spraying MW with hot water when he startled her while she was cleaning the shower.

The CPS worker testified that in light of MW's injuries, DW, then two years old, was given a medical examination that revealed a healing burn on DW's left forearm. Previously, DW's biological father had taken DW to the hospital emergency room upon discovering the burn. The father reported that the burn had occurred while the child was in the care of McNamee and further reported that the burn was caused by a cigarette lighter. Respondent told the CPS worker that she was aware of the burn on DW's arm, that it had occurred when she was not home and the children had been in McNamee's care, and that McNamee and DW's father had talked about the burn and resolved the issue; respondent explained that when she asked McNamee about the conversation, he told her it was resolved and not to worry about it. Respondent did not seek medical care for either of the children's burns, although she asked for advice from a friend who is a nurse regarding MW's burn. At the time the petition seeking termination of her parental rights was filed, respondent was still in a relationship with McNamee.

A second CPS worker testified that she interviewed McNamee and he explained that MW fractured his arm when he fell from a wagon while playing. He explained that MW may have injured his forehead by bumping it on the ground that same day. With regard to the burn on MW's back, he told the CPS worker that he accidently sprayed MW with the shower sprayer because MW startled him while he was in the bathroom.

The investigating CPS worker further testified that respondent had only one car seat for the children, and that she observed respondent and McNamee driving with one of the children in the car but no car seat. The CPS worker testified that petitioner Department of Health and Human Services ("DHHS") was seeking termination of respondent's parental rights because of the injuries suffered by the children, the status of MW's arm fractures, and respondent's failure to seek medical care for the children.

On October 11, 2018, DHHS filed a petition seeking to terminate respondent's parental rights to the children. At the conclusion of the trial on the petition, the trial court terminated

respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (*ii*), (g), (j), and (k)(*iv*).  Respondent appeals from the trial court's order.

## II.  DISCUSSION

### A. STATUTORY GROUNDS

Respondent contends that the trial court erred by finding that the statutory grounds for termination were established by clear and convincing evidence.  We disagree.  To terminate parental rights, the trial court must find that at least one statutory ground for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence.  *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).  We review for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination, MCR 3.977(K); *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014), and defer to the trial court's factual findings if the findings are not clearly erroneous.  *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).   A trial court's findings of fact are clearly erroneous if this Court is definitely and firmly convinced that the trial court has made a mistake, *id*., deferring to the special ability of the trial court to determine the credibility of witnesses.  *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).  To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect.  *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

In this case, the trial court found that termination was warranted under MCL 712A.19b(3)(b)(*i*), (b)(*iii*), (g),[1] (j), and (k)(*iv*).  The relevant portions of that statute provide:

(3)  The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b)  The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*)  The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

---

[1] Although the petition was filed October 11, 2018, and the trial court's order was entered December 19, 2018, the order references the previous language of subsection (g), before its amendment effective June 12, 2018.  However, because it is necessary to establish only one statutory ground by clear and convincing evidence to terminate a parent's parental rights, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), we decline to reach the issue whether termination of respondent's parental rights in this case was also warranted under the applicable language of subsection (g).

* * *

(*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent.

* * *

(iv) Loss or serious impairment of an organ or limb.

The trial court found that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(b)(*i*). The record supports this finding. MW had two arm fractures, a burn on his back, a cheek abrasion, a bruise inside his mouth, and a hematoma on his forehead, all which occurred at different times and were at different stages of healing. The pediatrician testified that MW's injuries and the circumstances of the injuries support a finding that they were caused by non-accidental trauma. Respondent admitted that some of the injuries occurred in her presence, and admitted that MW's burn was a result of her accidentally spraying him with hot water. Respondent did not seek immediate medical care following MW's injuries. The record therefore supports the finding that respondent caused MW's injury and there is a reasonable likelihood that the children will suffer from injury or abuse in the foreseeable future if placed in respondent's home.

The trial court also did not err did not err in finding that termination of respondents' parental rights was warranted under MCL 712A.19b(3)(b)(*iii*), finding that the act of a nonparent adult, McNamee, caused the physical injury and there is a reasonable likelihood that the children will suffer from injury or abuse by McNamee in the foreseeable future if placed in respondent's home. Both respondent and McNamee agree that the children were in McNamee's care when MW's arm was fractured, and when MW incurred the hematoma on his forehead. McNamee's explanation for the burn was that he accidentally sprayed MW with hot water when the child startled him in the bathroom; respondent's explanation was that she accidentally sprayed MW

with hot water when he startled her in the bathroom. There was also a healed burn on DW's arm, reportedly caused by being burned by a lighter while in McNamee's care. Again, respondent did not seek medical care for the children when she discovered that these injuries had occurred. Respondent was still in a relationship with McNamee at the time the petition was filed, and it was unknown whether she was still in a relationship with him at the time of the termination hearing. The record therefore supports a finding that McNamee injured MW and DW and that there is a reasonable likelihood that the children will suffer from injury or abuse in the foreseeable future if placed in respondent's home. For these same reasons, the trial court also did not err in terminating respondent's parental rights under MCL 712A.19b(3)(j), finding that there is a reasonable likelihood, based on the conduct or capacity of respondent, that the children will be harmed if returned to respondent's home.

The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(k), finding that respondent abused the child or a sibling of the child, resulting in serious impairment of a limb. The evidence supports a finding that MW was injured by non-accidental trauma that resulted in multiple arm fractures at different stages of healing, indicating a pattern of abuse. There was no specific evidence, however, that the injuries resulted in a serious impairment of MW's arm. However, because it is unnecessary to establish more than one statutory ground by clear and convincing evidence to terminate a parent's parental rights, *In re Ellis*, 294 Mich App at 32, we decline to reach the issue whether termination of respondent's parental rights in this case was warranted under subsection (k)(*iv*).

## B. BEST INTERESTS

Respondent also contends that the trial court clearly erred in finding that it was in the best interest of the children to terminate her parental rights. We disagree.

Once a statutory ground for termination has been demonstrated, the trial court must find that termination is in the best interests of the child before it may terminate parental rights. See *In re Moss*, 301 Mich App at 88. If the trial court finds that a preponderance of the evidence establishes that termination is in the best interests of the child, the trial court is required to terminate the parent's parental rights. MCL 712A.19b(5); *In re Moss*, 301 Mich App at 88. This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016).

To determine whether the termination of parental rights is in the child's best interests, the trial court should weigh all of the available evidence. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Typically, the trial court considers a variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being in the foster home, and the possibility of adoption. *Id*. In this case, however, the evidence demonstrated that the children were at risk of serious injury while in respondent's care and that respondent was unlikely to seek medical care for their injuries; by contrast, the children were being well-cared for in a foster home. The safety and security of the children being preeminent, the trial court accordingly did not err in finding that the termination of respondent's parental

rights was in the children's best interests. See *Medina*, 317 Mich App at 237 (at the best interests stage, the interest of the child in a stable home is superior to any interest of the parent).

## C. REASONABLE EFFORTS

Respondent also contends that she should have been given an opportunity to regain custody of the children and should have been provided services aimed at reunification. Again, we disagree. Generally, after a child has been removed from a parent's custody, the agency must make reasonable efforts to reunify the child with the parent unless certain aggravating circumstances exist. MCL 712A.19a(2); *In re Moss*, 301 Mich App at 90-91. However, services are not mandated in every case. See MCL 712A.18f(1)(b); *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). The agency is not required to provide services when reunification is not intended and termination of parental rights is the agency's goal. *In re Moss*, 301 Mich App at 91.

MCR 3.977(E) provides:

(E) The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

(1) The original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), (m), or (n);

(4) termination of parental rights is in the child's best interests.

In this case, the initial petition requested termination, the trial court found by a preponderance of the evidence that there were grounds to assume jurisdiction, the trial court found by clear and convincing evidence that at least one of the grounds for termination had been established, and the trial court further found that termination was in the best interests of the children. The agency therefore was not required to make reunification efforts. MCR 3.977(E); *In re Moss*, 301 Mich App at 91-92.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola